**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION**

MATTHEW T MCGILL,

        Plaintiff,

v.                                                     Case No:  5:20-cv-129-Oc-40PRL

DARIAN BURKE, ALAN HAYS, DAVID
R MILES and MARTHA MACFARLANE,

        Defendants.
_____/

## **ORDER**

Plaintiff Matthew T. McGill moves for the Court to issue a Preliminary Injunction halting the pending special recall election against him. (Doc. 15 (the "**Motion**")). Defendant David R. Miles responded in opposition (Doc. 32), and Plaintiff filed a Reply (Doc. 35). The Court held a hearing on April 22, 2020. Upon consideration, Plaintiff's Motion is due to be granted.

**I.**      **BACKGROUND**

In November 2018, Plaintiff was elected to Town Council for the town of Howey-in-the-Hills, Florida (the "**Town**"). (Doc. 3, p. 1). Throughout Plaintiff's tenure, his relationship with other Town officials has been fraught, and "[c]ouncil meetings often devolve into arguments and shouting matches between councilmembers." (*Id.*).

In December 2019, a group of Town citizens formed the "Recall Committee for Councilman Matthew T. McGill from Town Council of Howey in the Hills Florida 34737" (the "**Committee**"). (*Id.* at pp. 2–3). Defendant David R. Miles is Chair of the Committee. (*Id.*). On December 19, Defendant Miles submitted a Petition to Defendant Darian Burke

(the Town Clerk), requesting a recall election to remove Plaintiff from office. (*Id.*). A special recall election was scheduled to proceed on April 14, 2020. (*Id.* at p. 2).

The Petition lists malfeasance and misfeasance as justification for the recall. Specifically, the Petition contains the following "Statement of Grounds" for Plaintiff's removal:

> **Whereas**, it has been conclusively shown that Councilman Matthew T. McGill has committed misfeasance on numerous occasions since he was sworn into office on December 10, 2018. For example, the legal fees incurred by the Town increased by 81.971% in FY 2018-2019 compared to the average of the prior three fiscal years when McGill was not in office. This increase has resulted from his requests and conduct. Since McGill was in office for only ten months of the fiscal year, the increase is actually 98.365% over the prior three years average. His misfeasance has almost doubled legal fees the small Town has incurred.
>
> **Whereas**, it has been conclusively shown that Councilman McGill has committed malfeasance on numerous occasions since he was sworn into office on December 10, 2018. For example, prior to being elected, McGill was cited by the Town Code Enforcement Officer for not properly fencing his Recreational Vehicle, per Town Code. After assuming office, McGill hounded the Code Enforcement Officer, questioned his integrity, accused him of incompetence, when none of this was true. The Code Enforcement Officer was so stressed by McGill that he resigned. McGill then contacted Town staff to "Officially apply" for the vacated position.

(Doc. 1-2).

Plaintiff argues that the Petition fails to provide legally sufficient grounds for recall under Fla. Stat. § 100.361(2)(c)(3). Furthermore, he asserts that technical errors, fraud, and deceit tainted the signature collecting process. Accordingly, Plaintiff sought an *ex parte* Temporary Restraining Order ("**TRO**") against Defendant Burke and Defendant Alan Hays (the Supervisor of Elections for Lake County) to halt the recall election. (Doc. 3). The Court granted the motion and issued a TRO. (Doc. 6).

Plaintiff now moves to convert the TRO to a Preliminary Injunction. (Doc. 31).

## II. STANDARD OF REVIEW

The grant or denial of a preliminary injunction rests in the discretion of the district court. *Canal Auth. of the State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).[1] The district court, however, does not have unbridled discretion and must exercise that discretion in light of the "four prerequisites for the extraordinary relief of preliminary injunction." *Id.* (internal quotation marks omitted). The parties agree that the four prerequisites which Plaintiffs must establish are: (1) a substantial likelihood of success on the merits of the underlying case; (2) irreparable harm in the absence of an injunction; (3) that the harm suffered by Plaintiffs in the absence of an injunction would exceed the harm suffered by Defendants if the injunction issued; and (4) that an injunction would not disserve the public interest. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246–47 (11th Cir. 2002); *Miccosukee Tribe of Indians of Fla. v. United States*, 571 F.Supp.2d 1280, 1283 (S.D. Fla. 2008). "[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the 'burden of persuasion' as to *each* of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998) (emphasis added).

## III. DISCUSSION

### A. Defendants' Response in Opposition

The Court invited Defendants to file a consolidated response in opposition to Plaintiff's Motion within five days of service. Defendant Miles was served on April 7 (Doc.

---

[1] The Eleventh Circuit has adopted as binding precedent all decisions rendered by the former Fifth Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

12), Defendant Hays waived service on April 8 (Doc. 11), and Defendants MacFarlane and Burke were served on April 9 (Docs. 12, 13). Accordingly, a consolidated response was due on or by April 16.

When Defendants failed to file a response by April 16, the Court entered an Endorsed Order extending the deadline to April 17. (Doc. 29). The Court warned that, "If Defendants have not filed a response to the Motion for Preliminary Injunction by 5:00 PM, the Court will consider the Motion unopposed." (*Id.*).

Defendant Miles filed a response at exactly 5:00 PM on April 17. (Doc. 32). No other Defendant responded. Defendant Miles's response was not joint, and the Court does not interpret it as a consolidated response. Thus, the Court considers the Motion unopposed by Defendants Burke and Hays.[2]

### B. The Motion is Not Moot

Defendant Miles moved to cancel or postpone the April 22 hearing. (Doc. 31). He argues that the recall election scheduled for April 14 did not take place, so Plaintiff's Motion is moot and, therefore, nonjusticiable. (*Id.*). The Court disagrees.

Article III of the Constitution limits federal court jurisdiction to live cases or controversies, and the "case-or-controversy" requirement "subsists through all stages of federal judicial proceedings, trial and appellate." *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477 (1990). The Eleventh Circuit has held that "[a] claim for injunctive relief may become moot if: (1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and

---

[2] Defendant MacFarlane correctly notes that Plaintiff does not seek injunctive relief against her. (*See* Doc. 1).

4

irrevocably eradicated the effects of the alleged violation." *Siegel v. Lepore*, 234 F.3d 1163, 1172–73 (11th Cir. 2000) (quoting *Reich v. Occupational Safety & Health Review Comm'n,* 102 F.3d 1200, 1201 (11th Cir.1997)).

Neither of these elements are satisfied in this case. This case is "an action for permanent injunction to enjoin further proceedings in the effort to recall Plaintiff from office as a member of the Town council . . . ." (Doc. 1, ¶ 1). The Complaint does not speak solely to the timing of the recall election, but to the facial validity of the underlying recall petition. The election was set for a finite date, but it can always be rescheduled. Indeed, a cancellation can easily become a mere postponement. Without a preliminary injunction, the potential for irreparable harm remains.

The test articulated by the Eleventh Circuit does not preclude the finding that a live case or controversy continues to exist. *See Lepore*, 234 F.3d at 1172–73. Thus, Plaintiff's Motion is not moot, and Defendant Miles's motion (Doc. 31) is denied.

### C.     Plaintiff has a Substantial Likelihood of Success on the Merits

Florida's recall statute states that "[a]ny member of the governing body of a municipality . . . may be removed from office by the electors of the municipality." Fla. Stat. § 100.361(1). Removal first requires a recall petition, which "shall contain the name of the person sought to be recalled and a statement of grounds for recall." *Id.* § 100.361(2)(a). A statement (up to 200 words) of the grounds for recall are limited to only the following: (1) malfeasance; (2) misfeasance; (3) neglect of duty; (4) drunkenness; (5) incompetence; (6) permanent inability to perform official duties; and (7) conviction of a felony involving moral turpitude. *Id.* § 100.361(2)(d)(1)–(7). As the statute requires, the Committee filed a recall petition alleging misfeasance and malfeasance by Plaintiff.

The recall of an elected official is an "extraordinary proceeding," so the burden is "on those seeking to overturn the regular elective process to base the petition on lawful grounds or face the invalidation of the proceedings." *Garvin v. Jerome*, 767 So. 2d 1190, 1193 (Fla. 2000). Courts do not "rule on the truth or falsity of the charges against the official." *Moultrie v. Davis*, 498 So. 2d 993, 996 (Fla. 4th DCA 1986) (citing *Bent v. Ballantyne*, 368 So. 2d 351, 353 (Fla. 1979)); *accord Tolar v. Johns*, 147 So. 2d 196, 198 (Fla. 2d DCA 1962) ("The reasons for the recall whether true or false do not affect the proceeding. Their truth or sufficiency is for determination by the electors alone."). Instead, courts address only whether the conduct alleged in the petition was legally sufficient to establish the stated grounds for removal—a purely legal question. *Moultrie*, 498 So. 2d at 996. If not, the recall proceedings must be terminated. *See Gibson v. Kesterson*, 118 So. 3d 125, 128 (Fla. 1st DCA 2016) (Makar, J., concurring).

As a preliminary matter, the Petition contains inappropriate ambiguity. Both grounds for removal state that "it has been conclusively shown that Councilman McGill has committed [misfeasance and malfeasance] on numerous occasions since he was sworn into office on December 10, 2018." (Doc. 1-2). However, the Petition only provides one example of misfeasance and one example of malfeasance.[3] The reference to "numerous" other unspecified acts of misconduct may have misled voters into overestimating the scope and gravity of Plaintiff's alleged misconduct. Such generalizations alone provide sufficient grounds for invalidating the Petition.

Additionally, the Florida Supreme Court has held that a recall election cannot be predicated upon even a partially valid petition, explaining:

---

[3]   The Court is cognizant of the word limit imposed by Fla. Stat. § 100.361(2)(a).

> A ballot containing invalid grounds would almost certainly lead to abuse. For example, to garner support for a recall petition, an astute draftsman could couple legally insufficient (but politically charged) allegations with legally sufficient (but less politically compelling) grounds. While the valid grounds might not generate support for the recall petition, the invalid grounds might. Unless, upon judicial review, a defective petition endorsed by voters is invalidated, the legitimate purposes served by the recall statute would be severely undermined.

*Garvin*, 767 So. 2d at 1193. Thus, Defendants must demonstrate that *both* grounds for removal are valid. If not, the Court should reject the entire Petition.

   *1. Misfeasance*

  Misfeasance is "the performance, in an official capacity, of a legal act in an improper or illegal manner." *Moultrie*, 498 So. 2d at 995. Under Fla. Stat § 100.61, a recall election is impermissible where the alleged misfeasance by a municipal official consists of lawful actions done in a proper or lawful manner. *See Taines v. Galvin*, 279 So. 2d 9, 11 (Fla. 1973) ("There were no allegations of actions which were beyond the councilmen's authority or were in any way illegal."). "Legitimate or authorized actions of a city councilman, although unpopular, are not adequate to justify a recall." *Moultrie*, 498 So. 2d at 996.

  Here, the Petition states that Plaintiff's "requests and conduct" caused an increase in the Town's legal bills. (Doc. 1-2). Nothing in the Petition articulates what was improper or illegal about the fee increases, nor does it allege that Plaintiff exceeded his authority in incurring them. Instead, the Petition simply states that the increases occurred and that Plaintiff was the cause. That is not enough. The increase in legal fees could have been improper, illegal, *or* perfectly legitimate—each alternative is an equally plausible reading of the Petition.

Accordingly, the Petition does not provide legally sufficient grounds for recall due to misfeasance, and Plaintiff is likely to prevail on this issue.

   *2. Malfeasance*

Malfeasance is the "performance by a public official in his official capacity of a completely illegal and wrongful act that he either has no right to perform or has contracted not to do." *Wolfson v. Work*, 326 So. 2d 90, 91 (Fla. 2d DCA 1976) (citing BLACK'S LAW DICTIONARY 1109 (rev. 4th ed. 1968)). The misconduct must be positively unlawful. *Compare Bent*, 368 So. 2d at 353 (holding that violations of "city polic[ies]" and "the intent of the City Charter" do not constitute malfeasance because they were not prohibited under Florida law or the city charter), *with Wolfson*, 326 So. 2d at 91 (holding that violations of an express prohibition in the city charter constitute malfeasance).

Here, the Petition alleges that Plaintiff violated the Town Code by not properly fencing his Recreational Vehicle. (Doc. 1-2). However, the Petition concedes that the violation occurred "prior to [Plaintiff] being elected." (*Id.*). This allegation cannot justify removal because Plaintiff was not a "public official" acting in his "official capacity" at the time of the violation.

The Petition goes on to allege that, after assuming office, Plaintiff questioned the competence and integrity of the Town's Code Enforcement Officer and applied for the position after the incumbent resigned. Defendant Miles argues that this violated the Code of Ethics for Public Officers and Employees, which instructs that:

> No public officer, employee of an agency, or local government attorney shall corruptly use or attempt to use his or her official position or any property or resource which may be within his or her trust, or perform his or her official duties, to secure a special privilege, benefit, or exemption for himself, herself, or others.

Fla. Stat. 112.313(6). However, none of the discrete acts alleged in the Petition fit within the statutory proscription. At best, voters could infer that Plaintiff pressured the Town Code Enforcement Officer into resigning and then applied for the vacant position. But *anyone* could have applied for that position. The Petition fails to specify how Plaintiff secured a special privilege, benefit, or exemption that was unavailable to the general public.

Furthermore, the cases cited by Defendant Miles are inapposite. In those cases, the recall petition at issue identified a particularized legal violation. *Cf. Wolfson*, 326 So. 2d at 91 (petition alleged violations of the city charter); *Thompson v. Napotnik*, 923 So. 3d 537 (Fla. 5th DCA 2006) (petition alleged violations of Florida's Sunshine Law). Here, the Petition fails to allege a violation of any specific statute, rule of ethics, or legal principal. Voters are left to guess what law Plaintiff violated. Defendant Miles's post hoc elaboration is not enough to rehabilitate the Petition's defects.

Accordingly, the Petition does not provide legally sufficient grounds for recall due to malfeasance, and Plaintiff is likely to prevail on this issue as well. [4]

### D.   Plaintiff Will Suffer Irreparable Harm if the Special Election Proceeds

"[A] public officer has a property right in his tenure of office and cannot be deprived thereof without due process of law." *State v. Tedder*, 143 So. 148, 150 (Fla. 1932). A successful recall election based on a legally insufficient recall petition constitutes a

---

[4] Because the conduct alleged in the Petition was legally insufficient to establish statutory grounds for removal, the Court need not express an opinion on the merits of the alleged technical errors, fraud, and deceit involved in the signature collecting process.

deprivation of a property right without due process. Accordingly, Plaintiff will suffer irreparable harm in the absence of injunctive relief.

### E. The Threatened Injury to Plaintiff Outweighs the Harm to Others

The recall statute has already engaged in the appropriate balancing of equities—namely, it allows removal of public officials on serious grounds but makes general public dissatisfaction non-actionable. Indeed:

> The nature of the recall process balances two opposing positions: the democratic ideal of allowing the people to rectify serious mistakes in choosing officials, on the one hand, and the goal of allowing officials to work out their term of office unimpeded by having to defend against a series of recall attempts for trifling reasons, by disgruntled political opponents, and the like, on the other.

Jay M. Zitter, Annotation, *Sufficiency of Particular Charges as Affecting Enforceability of Recall Petition*, 114 A.L.R. 5th 1 (2003). Florida's recall statute reflects the Legislature's sound policy judgment that public officials should not be "ousted" based on a petition "that contains illegal grounds for recall in express violation of the statute." *Garvin*, 767 So. 2d at 1193.

As discussed, the Court believes that Plaintiff has a substantial likelihood proving that the Petition is facially invalid. Accordingly, the threatened injury to Plaintiff outweighs any public harm.

### F. A Preliminary Injunction Serves the Public Interest

The Court's public interest analysis is intertwined with the equitable considerations. Plaintiff is a public official who was duly elected by the residents of the Town. Those residents have an interest in the Court testing the legal sufficiency of the Petition before their chosen representative is recalled and potentially removed from office.

Electors who have become disillusioned with Plaintiff are not left without recourse: they can speak out and lobby against Plaintiff's actions; they can cajole, pressure, or even "hound" Plaintiff to resign; or they can try to replace him in the next election. However, Plaintiff's political opponents do not have the authority to hold an illegal recall election.

Thus, the public's interest in maintaining the rule of law weighs in favor of a preliminary injunction.

## IV. CONCLUSION

In sum, the Court makes the following findings of fact and conclusions of law:

1. There is a substantial probability of Plaintiff's success on the merits.
2. Plaintiff would suffer irreparable injury in the absence of an injunction.
3. The harm to Plaintiff in the absence of an injunction would exceed the harm to Defendants or other interested parties if the injunction is issued.
4. Injunctive relief will not disserve the public interest.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for a Preliminary Injunction (Doc. 10) is **GRANTED**.
2. Defendants are **ENJOINED** from taking any actions in furtherance of a special recall election based on the existing Petition. Nothing in this Order shall be construed to prevent Defendants from seeking to recall Plaintiff based on a new Petition.
3. Defendants are **DIRECTED** to destroy any existing ballots (including mail-in ballots) that have been prepared in anticipation of the April 14, 2020, special recall election.
4. A bond is not necessary under the circumstances of this case.

5. Defendant Miles's Motion to Continue or Cancel Hearing on Motion to Convert TRO Order (Doc. 31) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on April 23, 2020.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties